The following evidence is taken from the judge's notes:
Ira A. Alexander, the plaintiff, testified as follows: "In May of last year I worked at defendant's bleachery; was employed by Mr. Hawthorne, the superintendent. I was first employed to work in bleach-house in daytime; afterwards, I was employed to run the cans and see to the finishing of towels on a calender, and worked from 6 p. m. to 6 a. m. I went on this night work and worked two weeks and two nights, and on Tuesday evening, 6 May, something got the matter with the calendar, and Mr. Holdbrooks had not got it fixed. Mr. Hawthorne told me to see if I could see what was the matter with it, and to get it started before morning if I could. I went to work downstairs and run the dry cans until 3 o'clock. I then went to calender to find out what was the matter; I found it would not turn; I went on back, as I did not know how to fix it, and if I had I knew I could not have fixed it by myself.
I run the cans on till 6 a. m. and fifteen minutes before (429) changing time, when the hands came in, Mr. Hawthorne came and I told him what was the matter with the calender. I stopped the dry cans and got my coat to come home and Mr. Hawthorne said: "You stay and help Sam (Holdbrooks) to fix the calender," and knowing that if I disobeyed the order I would get turned off, I stayed and helped Sam till I got hurt. When Mr. Hawthorne gave the order he left and went downstairs. I went to Sam Holdbrooks to know what to do, and he said he did not know. The thing was a double-geared cogwheel. He got, John Cochran and Dick Caldwell to come and help us, and they came over; we went to take it down and got it slipped out; as we went to take it down, somehow, I don't know how, it came down all of a sudden and dropped and struck my left foot. The wheel was 18 inches across and 4 inches in diameter and weighed 500 pounds. They took off my shoe, my foot swelling so fast I could not walk home; they sent me home in a wagon; I can't express how much suffering it caused. For four weeks I was not out of the house. Dr. Archey was my physician. It was about six or seven months before I was able to go to work. *Page 305 
I was receiving 85 cents a night or $5 a week when hurt; my foot still gives me pain; the pain went all over my whole body all the time except when under the influence of opium. I am not a machinist or mechanic and never had any experience as such, nor did I hold myself out as such when I hired to them. Holdbrooks' business was to run calender. Cochran run the dry cans in daytime. Dick Caldwell was a calender waiting boy to bring up towels to second floor and then to third floor. Dick had been there about a week; he was a `bus porter before that. None of the men were mechanics. The defendant had several experienced machinists in its shops and others under orders of the superintendent.
"I knew nothing about fixing this machinery, but I knew I (430) would be turned off if I didn't help. I had never before that time fixed any machinery in the mill; I didn't know it was dangerous to handle that machinery in this way. We began work some few minutes after the order to do so, and I was hurt fifteen minutes after the order was given. Hawthorne did not come back till after I was hurt. Mr. Hawthorne did not give me any warning that it was dangerous to do this work. All he said was: `Stay and help Sam, and I'll see you get pay for your extra time.'"
Cross-examination: "Had been in this room two weeks and two nights. I had run this calender half the night about one week. A calender is a machine for finishing up towels. This wheel was 18 inches diameter and 4 inches across cogs. The axle about 2 1/2 or 3 inches in diameter; the cogwheel and shaft weighed 500 pounds; the wheel had spokes in it. Had charge of calender two weeks, but had run it only one week. I had not run any machinery like this before at defendant's mill. I did run a calender one day when Will Stuart was superintendent; no skill was required to run cloth through it. Have taken wheel off buggy. It required somebody to take it out that knew something about it; all you had to do was to take off tap, and then it was a question of how to get it down. Sam Holdbrooks had charge of it in daytime and his business was to take charge of it in daytime. Sam said he did not know how to take it down; we were helping Sam to take it down. Sam was directing how to take it down, if any one was. The cogwheel was gummed up; it stuck to shaft and would not turn. Don't know whether it was dry or cutting on shaft. Don't know what had to be done when taken off. I did not do the work because I thought I could do it. I didn't think we could do it. I did it because I was ordered to do it. I expected extra pay. I never had any thought about getting (431) hurt. I did not know whether we four men could do it or not. I knew nothing about it. I thought we could take it down after we got off tap. Mr. Holdbrooks said: `If you hold your end, we will hold ours.' *Page 306 
I can get along pretty well now, but my foot is stiff and still hurts. I went back to work in November; was not able to stand on my foot, and after I began work I had to lay out two days on account of giving out. I worked four days between May and November at Forest Hill to try whether I was able to work. The center of the cogwheel above the floor was about breast-high." Here witness explained how wheel was taken down, saying that you took off the tap and pulled the wheel out and let it down. "I could see how it was to be taken down."
Redirect: "No tackle was used. Have never been able to pay Dr. Archey's bill. I never saw one (cogwheel of calender) taken down before. I could not have had my foot any other place, lifting as I was."
Dr. Archie testifies as follows: "I was physician for plaintiff. I found his foot badly bruised and mashed across the top; skin slightly stripped; not cut, but badly bruised. I kept him under the influence of opiates for a month. Such a wound caused great physical pain; I saw him after June. I examined his foot last Saturday; his foot is stiff yet, about solid mass of bones; his foot is such I don't think he could stand on it for twelve hours. In my opinion, he could not have stood to work from May to November. Foot will gradually grow better, but will probably give him trouble all his life. If compelled to use it by standing up, it will retard his improvement. He owes me about (432) $30 or $40 for services."
Cross-examination: "I could not make out that bones were broken. The injury is more or less permanent; it will always give him trouble; something like rheumatism, and weather will affect it, of course."
From a judgment of nonsuit, the plaintiff appealed.
The facts in this case show a painful and unfortunate accident, but do not show any omission or breach of duty on the part of the defendant's agents or servants. His Honor properly sustained the motion for a judgment of nonsuit.
Affirmed.
Cited: Lassiter v. R. R., 150 N.C. 486; Horton v. R. R., 145 N.C. 137;Simpson v. R. R., 154 N.C. 53. *Page 307