W. G. LASSITER v. SEABOARD AIR LINE RAILWAY.

(Filed 14 April, 1909.)

**Railroads—Unloading Cars—Master and Servant—Accident—Dam-ages.**

When it appears that plaintiff was injured while unloading rails from a flat car, caused by a rail bounding back in an un-usual and unexplained way and striking him; that the method employed for unloading was considered the safest way; that the car had been properly loaded with the rails, and sufficient help furnished in unloading them, the injury was an accident, and the plaintiff cannot recover for consequent damages.

ACTION tried before *Webb, J.,* and a jury, at November Term, 1908, of CHATHAM.

Action for personal injury, alleged to have been sustained by reason of defendant's negligence. The evidence tended to show that plaintiff was, by direction of defendant's superintendent or road master, engaged, with other employees, in unloading iron rails from a flat car; that the rails were laid upon the car in the usual way, and that upon either side of the car "fish bars," or "angle plates," about eighteen inches long, were used as stand-ards. They were put in the "stirrups," or "cuffs," on the side of the car, for the purpose of holding the standards. Some of the rails had been taken up from the cross-ties and were being used to build a siding. The "fish bars" were suitable for stand-ards and "constantly used for that purpose." The rails were loaded in the usual way. There were several cars of rails. In unloading the cars, other than the one on which plaintiff was injured, the standards, or "fish bars," were removed and the rails thrown upon the ground. When the hands undertook to

uñload the car upon which the plaintiff was injured, it was found that the rails pressed against the standards, so that they could not be removed. The plaintiff and other hands were directed to unload by raising one end of the rail, lifting it over the standard and letting it fall to the ground, and then lifting the other end over in the same manner; or, as plaintiff says, the order was, "Pick up the end of the iron and throw it off." He says that, as he did so, "it bounded some way or other and dashed back to the car." In reply to the question, "When you picked up the end of the rail to toss it over, it caught at the other end and flew back—is that the way you described it?" "It bounded and flew back. * * * I was not thinking about it; I was just trying to carry out orders. I thought it would go to the ground."

Mr. Cain, the section master, a witness for plaintiff, says that Captain Tussey, the road master, ordered the hands to throw the rails off. "He said he could not get the standards out until after he got the rails from around the standards; they were piled against the standards." This witness said the car was loaded in the usual way; that the fish bars made good standards—were constantly used for that purpose; that he had unloaded rails in that way before, and had often seen it done; they had thrown out two or three rails before the plaintiff was injured. The rail struck plaintiff's leg as it "bounded back," and inflicted the injury for which he sues.

The foregoing is the substance of the evidence on behalf of the plaintiff in regard to the way in which he received the injury. He alleges that defendant was negligent in several respects. His Honor instructed the jury that there was no evidence that the car was not properly loaded or that there was not a sufficient number of hands for that purpose. The defendant requested his Honor to instruct the jury, "From all of the evidence in this case, the cause of the injury was an accident, and that they will answer the first issue 'No.'" This was refused, and defendant excepted. His Honor instructed the jury that if they found that, as the plaintiff picked up the rail to toss it off the car, the other end of the rail was caught or hung, and if they should further find that Cain or Tussey knew that the rail

was caught or hung, or that they could have known by observation or ordinary care that it was caught, and failed to do so, and, after knowing it was caught at the end, it was tossed over and rebounded, and, by reason of the fact that it was caught before it was picked up or after it was picked up, it hurt plaintiff, they would answer the first issue. "Yes." Defendant excepted. There was a verdict for plaintiff. Judgment and appeal.

*Long & Long* for plaintiff.
*Murray Allen* and *Hayes & Bynum* for defendant.

CONNOR, J., after stating the case: The defendant lodged several exceptions to his Honor's refusal to give special instructions, and to the instructions given, but error is assigned only for the refusal to nonsuit and, what is equivalent, to instruct the jury that the injury sustained by plaintiff was the result of an accident. The uncontradicted evidence is that the rails were loaded in the usual way, and that the "fish bars" were suitable and usually used for standards. His Honor instructed the jury that there was no evidence that the cars were not properly loaded or that there were not a sufficient number of hands to assist in unloading. It is evident that plaintiff and Mr. Cain, who helped him, were able to and did lift one end of the rail over the standard. It does not appear that the fact that the standards were not removed was the proximate cause of the injury. We do not find any suggestion in the evidence that the method of handling the rails was unusual or dangerous, provided a sufficient number of hands were furnished to lift them over the standard. His Honor eliminated every suggestion of negligence, other than the question whether Tussey, who gave the order, and Cain, who assisted the plaintiff in executing it, saw or could have seen by the exercise of ordinary care that the rail was hung. We see no ground for exception to the measure of duty imposed upon them. It was undoubtedly the duty of the person giving the order to unload the rails to use ordinary care to see that they could be handled with safety, in the manner directed by him. There is no evidence or suggestion that either of them did in fact see that the rail was "hung," nor does it very clearly appear how it was "hung." We are unable to find

any evidence that there was anything in the position of the rail to suggest to them that the end lifted over the standard would not, as others had done, similarly situated and handled, fall to the ground. All of the witnesses concur in saying that the rails were loaded in the usual way; two or three had been unloaded without accident. The method pursued in unloading was not unusual; therefore unusual results could not be reasonably anticipated. We are unable to find any suggestion in the evidence explaining why the end of the rail, when lifted over the standard, rebounded. We, of course, know that there was some obstruction to the anticipated action of the other end of the rail which should and, but for some obstruction, would have moved upwards as the end next plaintiff went to the ground. The plaintiff, in answer to the question, "What caused it to spring back?" said: "I suppose it got caught at the other end, or some way; it got down so quick it bounded in some way and flew back and struck me." He further says: "I could not say how it was done; it came back with pretty smart force—very quickly."

In *Keck v. Tel. Co.,* 131 N. C., 277, where it appeared that there was nothing unusual in the conditions under which the work was done—no lack of hands and "no mishap or danger anticipated"—the injury was held to be the result of an accident, which is "an event from an unknown cause, or an unusual and unexpected event from a known cause—chance, casualty." *Crutchfield v. Railroad,* 76 N. C., 322. In *Martin v. Manufacturing Co.,* 128 N. C., 264, it is said: "Injuries resulting from events taking place without one's foresight or expectation, or an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected, must be borne by the unfortunate sufferer."

In *Bryan v. Railroad,* 128 N. C., 387, *Douglas, J.,* said: "The employer is not responsible for an accident simply because it happens, but only when he has contributed to it by some act or omission of duty." In this case a new trial was ordered, with the suggestion that a nonsuit should have been granted. *Alexander v. Manufacturing Co.,* 132 N. C., 428; *Frazier v. Wilkes,* 132 N. C., 437. While we regret the painful injury which the plaintiff sustained, we are unable to see how, by

reasonable human foresight or precaution, the eccentric course of the rail could have been anticipated and therefore prevented. We cannot think that it was negligent to pursue a course which none of the witnesses suggest was either unusual or hazardous. Mr. Tussey says that he had been at that kind of work fourteen years; that he had ample force. "It is always customary to take hold of the rail and throw one end off to prevent accident. Some men will throw quicker than others and let the rail fall down, and for this reason we have adopted the plan to throw one end off at the time. It makes it much safer than trying to throw the entire rail off. It was the method adopted by all of the roads that I have worked for in unloading rails." W. C. Wooten, who was section foreman and present when the accident occurred, says of the method of unloading: "It is safer, one end at a time. If you try to pick up both at the same time, sometimes the rail will turn and catch your fingers." This is not contradicted, and is consistent with plaintiff's evidence. We think that his Honor should have granted the motion for nonsuit. Upon the whole of the evidence the plaintiff's injury was the result of an unforeseen and unavoidable accident.

There is
Error.