The plaintiff sued to recover damages for injury alleged to have ensued from negligence of defendant. Motion to nonsuit was sustained. The plaintiff appealed.
The facts are sufficiently stated in the opinion of the Court by MR. JUSTICE BROWN.
The engine of defendant's passenger train, for some unknown reason, careened slightly over the track crossing a trestle at Greenville, while running very slowly within the town limits. The passengers did not know of the accident until informed by the conductor.
All the evidence shows the careening of the engine twisted the rails on one side. The angle bars are pieces of steel bolted in the hollow of the *Page 74 
rails and holding ends of two rails together. The twisting of the rails left the nuts of the bolts of angle bars next to the ground so they could not well be reached by a wrench. The section master, with plaintiff and two other hands, undertook to repair the track and get passenger train on its way as speedily as possible.
They were knocking off the bolt heads with a hammer when the released rail suddenly sprang up in an unaccountable manner and hit plaintiff on the head. His own evidence shows he was not seriously hurt.
The grounds of negligence alleged and set out in brief are: That the defendant did not furnish the plaintiff a reasonably safe place to work; that it did not furnish the plaintiff with safe, proper, and necessary tools, such as are adopted and in general use; and that it failed to use reasonable care and precaution for the safety of plaintiff and the other employees.
1. The first ground of negligence is so untenable that it need not be discussed. It was the duty of the defendant to relieve its passenger train and forward the passengers on their journey as speedily as it (90) reasonably could be done. It is manifest from all the evidence that the section master and his hands were working in the only place in which it was possible for them to do the work.
2. We will consider the other two specifications of negligence together.
In the twisted condition of the rails, it was necessary to unjoint the ends of two rails by removing the connecting angle bars. This could only be done by removing the nuts or heads of the bolts. Ordinarily the nuts could have been unscrewed with a wrench, but owing to the twisted condition of the rail the workmen could not get at the nuts with a wrench, so it became necessary to knock off the heads of the bolts (instead of unscrewing the nuts) with a hammer. After the bolts, which went through the hollow of the rail and angle bar, were removed, either by unscrewing the nuts or breaking off the heads, it became necessary to remove the steel angle bar (2 feet long) from the hollow of the rail before the rail could be disconnected from the end of the other rail.
In order to remove the angle bars, it was necessary to knock the rails with a hammer, and all the evidence shows that while the other two section hands were hammering the rail to get out the angle bar, the rail accidentally flew up and hit the plaintiff.
We quote from examination of plaintiff on this point:
Q. The engine was just bent over; it was not entirely off the track? A. The engine was off where I could see when I got there; it was lying down; the tender was practically off.
Q. That had occasioned the twisting of the rails? A. Yes, sir. *Page 75 
Q. Was not the rail in such a condition that wrench could not be used? The bolts were held down and could not be removed with a wrench? A. I don't know, because we didn't try to.
Q. As a matter of fact, could the angle bars have been removed in any other way than by knocking, the way Mr. Whitehurst asked you to do? A. No, sir; the angle bars could not, but the bolts could; the nuts could have gotten out. (91)
Q. If the nuts were down in such a way that a wrench could not get at them, how could they be removed? A. The upper side we knocked on.
Q. The bolts were turned under, and what Mr. Whitehurst told you was to knock so as to break it loose? A. Yes, sir.
Q. And you knocked a while and Henry knocked a while, and after a while Henry struck a lick and unexpectedly the angle bar sprang up and hit you on the head? A. Yes, sir.
Q. Can you explain what you call an angle bar, when you say you knocked up the angle bar? A. It is a bar that couples the rails together; the two rails come together, and it clamps the two rails together.
Q. And you use the same kind of a hammer? A. Yes, sir; we have a hammer so as to tighten them up.
Q. How long is the angle bar? A. Two feet.
Q. You say you have had considerable railroad experience. Is it not customary to break the heads of bolts off in this manner and loosen the angle bar; is not that the usual way to knock them off when they are tight? A. If you go to take them off and nothing is the matter, you go and screw them off; if they are worn, you break them off.
Q. How do you break them off? A. You knock them off with a hammer.
Henry Daniels, a witness for plaintiff, testifies:
Q. What did Mr. Whitehurst tell you and Joe Briley to do? A. I don't remember his language; he told us to go and knock the rail and try to get the angle bars off and get it straight so we could let the freight from Kinston go by. They were going to uncouple the tender from the cars. Joe Briley and me went and knocked the rail with the hammer.
Q. Tell what happened. A. I don't know how long we worked; one would knock a while and the other would knock a while. I think Briley and Matt knocked and I took hold of the hammer and knocked. When I went to knock the bar flew up and struck me on the hand and struck Briley on the head; it hurt me pretty badly.
This is all the evidence offered by plaintiff bearing on the cause (92) of the alleged injury. *Page 76 
All the remaining testimony, offered by defendant, shows conclusively that the section master was using the only practicable means to unjoint the twisted rail and relieve the train.
We are unable to find any evidence of negligence upon the part of the section master or the defendant.
All the evidence shows that plaintiff's hurt was the result of an accident which ordinary foresight and judgment could not guard against.
"Accidents cannot be eliminated by law; all that the law has done is to say that the employer shall exercise reasonable care to prevent an accident, and the courts hold him responsible when he fails to exercise such care. The employer is not responsible for an accident simply because he hires, but only when he has contributed to it by some act or omission of duty." Douglas, J., in Bryan v. R. R., 128 N.C. 390.
The twisted rail might have unexpectedly "popped up" and hit plaintiff had the bolts been removed by unscrewing the nuts instead of knocking off the heads of the bolts with a hammer.
The rail could not spring up as long as the angle bar was in place in the hollow of the rail, and all the evidence shows that it could only be removed by hammering on the rail after the bolt heads were knocked off. What caused the rail to spring up is unexplained by the evidence.
In Raiford v. R. R., 130 N.C. 598, a case in all respects very much like the one under consideration, it is said that "An accident is an `event from an unknown cause,' or an `unusual and unexpected event from a known cause'; `chance, casualty.'"
We are of the opinion under this definition of the word "accident" that plaintiff's hurt was accidental. The cause of the injury is known, but the event was most unusual and unexpected. See, also, Keck v. Tel. Co.,131 N.C. 277; Brookshire v. Electric Co., 152 N.C. 669; Martin v. Mfg. Co.,128 N.C. 266; Lassiter v. R. R., 150 N.C. 483; Noble v. Lumber Co.,151 N.C. 77; Black's Accident Cases, sec. 8.
In concluding this opinion we can quote with profit the language (93) of Mr. Justice Hoke in House v. R. R., 152 N.C. 398: "The rule requiring a reasonably safe and suitable place to work obtains in cases of machinery more or less complicated and more especially driven by mechanical power, does not apply to ordinary conditions requiring no special care, preparation, or prevision; the defects readily observable and the injury unlikely to be anticipated; in the latter class the element of proximate cause is ordinarily lacking."
We are of opinion that the learned judge of the Superior Court properly sustained the motion to nonsuit.
Affirmed. Action dismissed.
Cited: Wright v. Thompson, 171 N.C. 91. *Page 77